US DISTRICT COURT
WESTERN DIST ARKANSAS
FILED

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

MAR **0 2** 2022

UNITED STATES OF AMERICA

v.

JOHN NOCK (01)
BRIAN BRITTSAN (02)
KEVIN GRIFFITH (03)
ALEXANDER ITUMA (04)

No. 5:22cr50012-001-004 JAMIE GIANI, Clerk

By _____

Deputy Clerk

18 U.S.C. § 1349
18 U.S.C. § 1343
18 U.S.C. § 1956(h)
18 U.S.C. § 1957

## I N D I C T M E N T

THE GRAND JURY CHARGES THAT:

### Introductory Allegations

1.     The Brittingham Group ("TBG") was a limited liability company headquartered in the Western District of Arkansas.  It purported to be a financial advisory and investment firm that made investments on behalf of clients.

2.     Defendant **JOHN NOCK** was the founder of TBG and a resident of Fayetteville, Arkansas, in the Western District of Arkansas.

3.     Defendant **BRIAN BRITTSAN** was a director of TBG and a resident of San Marcos, California.

4.     Defendant **KEVIN GRIFFITH** was a director of TBG who purportedly managed its Asian operations.  GRIFFITH was also a director and beneficial owner of Gold Express Holdings Limited and a director and beneficial owner of Wealth Mark International Investment Limited.  He was a resident of Utah.

5. Defendant **ALEXANDER ITUMA** was a director of TBG. He was the beneficial owner of Smart Jobs Limited, Smart Jobs USA LLC, SJL LLC, SJL Merger Sub, and SJL Venture (collectively, "Smart Jobs"). He was a resident of Utah.

6. Individual 1 was a resident of Australia and a principal of companies that received funds from certain transactions involving TBG.

7. Individual 2 was the principal of an entity that was held out as the underwriter of certain transactions involving TBG.

### The Scheme and Artifice to Defraud

8. Beginning in or around 2013 and continuing through at least on or about April 2021, the exact dates being unknown to the Grand Jury, in the Western District of Arkansas and elsewhere, the defendants, **JOHN NOCK, BRIAN BRITTSAN, KEVIN GRIFFITH,** and **ALEXANDER ITUMA**, along with others known and unknown to the Grand Jury, did voluntarily and intentionally, with the intent to defraud, execute and attempt to execute a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and, for the purpose of executing the scheme and artifice to defraud, transmitted, and caused to be transmitted, by means of wire communication in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds.

### Purpose of the Scheme and Artifice to Defraud

9. The purpose of the scheme was for the defendants, and others known and unknown to the Grand Jury, to (a) unlawfully enrich themselves by obtaining funds from victim-investors by offering exorbitant investment returns and promising that the victim-investors' money would be protected, but then diverting those funds to themselves; (b) conceal from victim-investors the true status of their investment funds and the unlikelihood that they would obtain a return on their

2

investments; and (c) conceal from the victim-investors the manner in which the defendants, and others known and unknown to the Grand Jury, were using the stolen victim-investor funds.

**Manner and Means of the Scheme and Artifice to Defraud**

10.    The manner and means of the scheme and artifice to defraud included, but were not limited to, the following:

a.    NOCK and BRITTSAN claimed to offer services to individuals and businesses who were searching for high-yield investments.  They solicited investments through their firm, TBG, by promising "structured" financial transactions involving standby letters of credit ("SBLCs"), bank guarantees, and other financial instruments that they offered to monetize.  The solicitation required the victims to send large sums of money up front.  NOCK and BRITTSAN often told the victims that NOCK and BRITTSAN needed that up-front money to pay fees or satisfy other start-up costs so they could monetize the underlying instrument.  In reality, there was no legitimate investment.

b.    To create the appearance of legitimacy, NOCK and BRITTSAN falsely represented to victims that they had an office located at 14 Wall Street, New York, New York, an exclusive bank investment program through Financial Institution A, and established credit line facilities with several companies, including a Smart Jobs company. They also falsely claimed that they had previously succeeded in creating investment returns in similar transactions as a way to attract investors based on proven historic success.

c.    NOCK and BRITTSAN entered into "Strategic Agreements" with their victims in which they promised large returns in a short period of time—as much as 200 percent or 300 percent within 20 to 30 days.  They also guaranteed the safety of the victims'

principal payments, often through fraudulent letters on third-party letterhead, including the letterhead of financial institutions.

d.    NOCK and BRITTSAN directed the victims to send their money to accounts controlled by others involved in the scheme, including GRIFFITH and ITUMA. GRIFFITH, ITUMA, NOCK, BRITTSAN, and others involved in the scheme then transferred the money through a complex web of bank accounts throughout the world.

e.    Other members of the scheme posed as the individuals who were facilitating some of the investments, including Individual 1, and NOCK and BRITTSAN appeared to ask Individual 1 and these other members of the scheme to explain to the victims what was happening with their investments.  However, in reality, NOCK and BRITTSAN worked with these other members of the scheme, including GRIFFITH and ITUMA, to craft the stories that they told the victims in order to conceal the fraudulent nature of the scheme. NOCK and BRITTSAN did this, in part, by drafting letters and sending them to the other members of the scheme, including GRIFFITH and ITUMA, to send back to NOCK and BRITTSAN as if the letters had been written by the other members of the scheme themselves.

f.    NOCK and BRITTSAN made excuses to their victims as to why the victims had not received their promised investment returns or the return of their principal, but no victim received the investment returns they were promised, and very few were able even to recoup their principal.  NOCK and BRITTSAN sometimes tried to mollify victims by falsely claiming that high-level officials or government agencies, either in the countries where the supposed investments were taking place or in the United States, were involved in helping to ensure the victims were repaid or were the reason why the transfer of money

was being delayed.  On occasion, NOCK or other members of the scheme fabricated letters involving those officials or agencies in order to continue to mollify the victims of the scheme.

g.    Later in the scheme, NOCK began claiming that he had used an underwriter, Individual 2's company, on TBG investment deals, and he used the presence of that underwriter to further provide assurance to victims that their money was safe and would be returned to them.  In reality, Individual 2 and his company were not underwriters, had no role in structuring the transactions, and had no control over the disbursement or distribution of the victims' funds.

h.    As a result of this scheme, the defendants and other members of the scheme obtained more than $16 million in funds from their victims.

## COUNT 1
(Conspiracy to Commit Wire Fraud)

11.    Paragraphs 1 through 10, including all subparagraphs, of this Indictment are realleged and incorporated by reference as if fully set forth here.

12.    From in or around 2013 continuing through at least April 2021, within the Fayetteville Division of the Western District of Arkansas and elsewhere, the defendants, **JOHN NOCK**, **BRIAN BRITTSAN**, **KEVIN GRIFFITH**, and **ALEXANDER ITUMA**, voluntarily and intentionally conspired and agreed with each other, and with others known and unknown to the Grand Jury, to commit the offense of wire fraud, that is, having devised and intending to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, to transmit and cause to be transmitted, by means of wire communications in interstate and foreign commerce, certain writings, signs,

5

signals, pictures, and sounds for the purpose of executing the scheme and artifice, in violation of Title 18, United States Code, Section 1343.

### Purpose of the Conspiracy

13.    Paragraph 9 of this Indictment is realleged and incorporated by reference as if fully set forth here as a description of the purpose of the conspiracy.

### Manner and Means of the Conspiracy

14.    Paragraph 10, including all subparagraphs, of this Indictment is realleged and incorporated by reference as if fully set forth here as a description of the manner and means of the conspiracy.

All in violation of Title 18, United States Code, Section 1349.

### COUNTS 2 THROUGH 10
(Wire Fraud)

15.    Paragraphs 1 through 10, including all subparagraphs, of this Indictment are realleged and incorporated by reference as if fully set forth herein.

16.    On or about the dates set forth in the table below, within the Fayetteville Division of the Western District of Arkansas and elsewhere, for the purpose of executing and attempting to execute the above-described scheme and artifice to defraud, the defendants, **JOHN NOCK, BRIAN BRITTSAN, ALEXANDER ITUMA,** and **KEVIN GRIFFITH**, aided, abetted, induced, counseled, and encouraged by each other and by others known and unknown to the Grand Jury, transmitted and caused to be transmitted by means of wire communications in interstate and foreign commerce the writings, signs, signals, pictures, and sounds set forth below:

| Count | Date (On or About) | Description |
|---|---|---|
| 2 | 2/22/2018 | Electronic transfer of $75,000 from a Smart Jobs account at Financial Institution B ending in x1203 to a TBG account at |

| | | Financial Institution C ending in x6836 routed from outside the state of Arkansas into the Western District of Arkansas. |
|---|---|---|
| 3 | 2/23/2018 | Electronic transfer of $5,000 from a TBG account at Financial Institution C ending in x6836 to an account in the name of BRITTSAN at Financial Institution C ending in x1106 routed from the Western District of Arkansas to outside the state of Arkansas. |
| 4 | 3/2/2018 | Email from NOCK to Victim 1, copying BRITTSAN, routed from the Western District of Arkansas to outside the state of Arkansas, falsely stating that the "Bankers" would be sending Victim 1 his money by the following day at the latest. |
| 5 | 4/19/2018 | Electronic transfer of $15,000 from a Smart Jobs account at Financial Institution B ending in x1203 to a TBG account at Financial Institution C ending in x6836 routed from outside the state of Arkansas into the Western District of Arkansas. |
| 6 | 5/24/2018 | Electronic transfer of $10,000 from a Smart Jobs account at Financial Institution B ending in x1203 to a TBG account at Financial Institution C ending in x6836 routed from outside the state of Arkansas into the Western District of Arkansas. |
| 7 | 7/9/2018 | Electronic transfer of $100,000 from a TBG account at Financial Institution C ending in x6836 to an account in the name of Investment Company A at Financial Institution D ending in x0240 routed from the Western District of Arkansas to outside the state of Arkansas. |
| 8 | 7/10/2018 | Electronic transfer of $150,000 from a TBG account at Financial Institution C ending in x6836 to an account in the name of Investment Company A at Financial Institution D ending in x0240 routed from the Western District of Arkansas to Johannesburg, South Africa. |
| 9 | 9/21/2018 | Email from NOCK to a victim, copying BRITTSAN, routed from the Western District of Arkansas to outside the state of Arkansas, falsely stating that NOCK and BRITTSAN had never enriched themselves in any way through this scheme. |
| 10 | 1/22/2019 | Email from NOCK to BRITTSAN routed from the Western District of Arkansas to outside the state of Arkansas, sending a letter purportedly from INDIVIDUAL 1's company that BRITTSAN had edited the day before to send to Victim 2, falsely stating that INDIVIDUAL 1's company would pay double profits to Victim 2 for the delay. |

All in violation of Title 18, United States Code, Section 1343.

7

## COUNT 11
(Conspiracy to Commit Money Laundering)

17.     Paragraphs 1 through 10, including all subparagraphs, of this Indictment are realleged and incorporated by reference as if fully set forth herein.

18.     Beginning in or around 2013, and continuing through in or around at least April 2021, the exact dates being unknown to the Grand Jury, within the Fayetteville Division of the Western District of Arkansas and elsewhere, the defendants, **JOHN NOCK**, **BRIAN BRITTSAN**, **KEVIN GRIFFITH**, and **ALEXANDER ITUMA**, voluntarily and intentionally conspired and agreed with each other, and with others known and unknown to the Grand Jury, to commit certain offenses against the United States, that is:

    a.     to conduct and attempt to conduct financial transactions affecting interstate and foreign commerce involving the proceeds of a specified unlawful activity (that is, Conspiracy to Commit Wire Fraud, in violation of Title 18, United States Code, Section 1349; and Wire Fraud, in violation of Title 18, United States Code, Section 1343) with the intent to promote the carrying on of the specified unlawful activity, knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18 United States Code, Section 1956(a)(1)(A)(i); and

    b.     to conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, which financial transaction involved the proceeds of specified unlawful activity, knowing the property involved in the transaction represented the proceeds of some form of unlawful activity (that is, Conspiracy to Commit Wire Fraud, in violation of Title 18, United States Code, Section 1349; and Wire Fraud, in violation of Title 18, United States Code, Section 1343), and knowing that such transaction was

8

designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

All in violation of Title 18, United States Code, Section 1956(h).

## COUNT 12
(Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity)

19.    Paragraphs 1 through 10, including all subparagraphs, of this Indictment are realleged and incorporated by reference as if fully set forth herein.

20.    On or about March 14, 2018, within the Fayetteville Division of the Western District of Arkansas and elsewhere, defendant **JOHN NOCK** knowingly engaged and attempted to engage, and caused and aided and abetted others in engaging, in a monetary transaction in criminally-derived property that was of a value greater than $10,000, that is, the wire transfer of $50,000 from a TBG Financial Institution C bank account ending in x6836 to a Financial Institution E bank account ending in x5830, such property having been derived from specified unlawful activity (that is, Conspiracy to Commit Wire Fraud, in violation of Title 18, United States Code, Section 1349; and Wire Fraud, in violation of Title 18, United States Code, Section 1343).

All in violation of Title 18, United States Code, Section 1957.

## FORFEITURE

### Wire Fraud

1.    The allegations contained in Counts One through Ten of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2.    Upon conviction of the offenses in violation of Title 18, United States Code, Sections 1343 and 1349 as set forth in Counts One through Ten of this Indictment, the defendants,

9

**JOHN NOCK**, **BRIAN BRITTSAN**, **KEVIN GRIFFITH**, and **ALEXANDER ITUMA**, shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses. The property to be forfeited includes, but is not limited to a forfeiture money judgment in the amount of at least $16 million, which represents the gross proceeds of the offenses.

3.    If any of the property described above, as a result of any act or omission of the defendants:

      a.    cannot be located upon the exercise of due diligence;

      b.    has been transferred or sold to, or deposited with, a third party;

      c.    has been placed beyond the jurisdiction of the court;

      d.    has been substantially diminished in value; or

      e.    has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

All pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

Money Laundering

1.    The allegations contained in Counts Eleven and Twelve of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Sections 982(a)(1).

10

2.       Pursuant to Title 18, United States Code, Section 982(a)(1), upon conviction of an offense in violation of Title 18, United States Code, Section 1956 and 1957, the defendants, **JOHN NOCK**, **BRIAN BRITTSAN**, **KEVIN GRIFFITH**, and **ALEXANDER ITUMA**, shall forfeit to the United States of America any property, real or personal, involved in such offense, and any property traceable to such property. The property to be forfeited includes, but is not limited to, a forfeiture money judgment.

3.       If any of the property described above, as a result of any act or omission of the defendants:

a.       cannot be located upon the exercise of due diligence;

b.       has been transferred or sold to, or deposited with, a third party;

c.       has been placed beyond the jurisdiction of the court;

d.       has been substantially diminished in value; or

e.       has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section

[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

11

982(b)(1) and Title 28, United States Code, Section 2461(c).

A TRUE BILL

*/s/Grand Jury Foreperson*
Grand Jury Foreperson

JOSEPH S. BEEMSTERBOER
CHIEF, FRAUD SECTION

By:

Philip B. Trout
Vasanth Sridharan
Trial Attorneys, Fraud Section
Virginia Bar No. 79152
1400 New York Ave. NW
Washington, D.C. 20530
(202) 616-6989
Philip.Trout@usdoj.gov

DAVID CLAY FOWLKES
UNITED STATES ATTORNEY

By:

Steven M. Mohlhenrich
Assistant United States Attorney
Maryland Bar No. 9212160240
414 Parker Avenue
Fort Smith, Arkansas 72901
(479) 783-5125
Steven.Mohlhenrich@usdoj.gov

12